IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
ST. THOMAS AND ST. JOHN DIVISION

| | | |
|---|---|---|
| BRETT M. MCCLAFFERTY a/k/a MAC MCCLAFFERTY<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN FAWKES and RAYMOND WILLIAMS<br><br>Defendants. | ) | CASE NO. 3:26-cv-00031 |

**MEMORANDUM OPINION**

## I. BACKGROUND

*a) Allegations of the Complaint*

The Complaint alleges the following: The Plaintiff, Brett M. McClafferty (hereinafter "McClafferty"), sought to qualify as an independent candidate for Delegate to Congress. That required at least 100 valid signatures from the St. Thomas/St. John District and 100 from the St. Croix District. [ECF No. 1, ¶ 6]. McClafferty timely submitted 127 signatures from St. Thomas/St. John and 106 from St. Croix. [Id. at ¶ 7].

Both districts issued cure notices after determining the initial submissions were insufficient. [Id. at ¶ 8]. McClafferty submitted approximately 288 additional signatures within the cure period, bringing his total to approximately 521. [Id. at ¶ 9]. The Deputy Supervisor for each district notified McClafferty in writing that he had cured all defects. [Id. at ¶ 10].

Defendant Carolyn Fawkes, who serves as the Supervisor of the Election System of the Virgin Islands (hereinafter "Fawkes"), then postponed the certification deadline twice in order to

investigate six emailed complaints concerning the manner in which McClafferty's campaign collected signatures on St. Croix. [Id. at ¶ 11]. McClafferty alleges the complaints were unnotarized, and that several were undated and unsigned. On June 15, 2026, Fawkes issued a notice disqualifying McClafferty on the ground that her investigation showed the integrity of the petitions had been compromised. [Id. at ¶ 12].

McClafferty noticed an appeal to the Board of Elections the same day and filed a supporting brief on June 30. [Id. ¶¶ 13–14]. On July 1, 2026, Defendant Raymond Williams (hereinafter "Williams"), who serves as Chairman of the Virgin Islands Board of Elections, convened an emergency meeting of the Board. At that meeting, the Board entered executive session for three hours and, upon returning, voted 7–2 with one abstention to uphold McClafferty's disqualification. [Id. at ¶ 15].

McClafferty's complaint pleads five counts: Count I alleges a violation of Title 18, Chapter 17, Subchapter III of the Virgin Islands Code. Count II alleges that Fawkes conducted an investigation reserved by 18 V.I.C. § 47(8) to the Board of Elections. Count III alleges that the disqualification imposed an additional qualification for congressional office in violation of U.S. Const. art. I, § 2. Count IV alleges First and Fourteenth Amendment violations under 42 U.S.C. § 1983. Count V alleged civil RICO violations, but that has been voluntarily dismissed under Fed. R. Civ. P. 41(a)(1)(A)(i). [ECF No. 21].

*b) Procedural History*

McClafferty filed suit on July 8, 2026, proceeding *pro se*. The Court denied his emergency application for a temporary restraining order and set an evidentiary hearing on the motion for a preliminary injunction. Fawkes and Williams moved to dismiss on August 21, 2026. McClafferty responded on August 24, 2026, and, on August 25, 2026, filed the Virgin Islands Attorney General's

August 24, 2026, advisory opinion addressed to the Governor, asking the Court to take judicial notice of it. The Court held an evidentiary hearing on August 26, 2026, and received supplemental briefs on September 3, 2026.

Before the Court now are the Defendants' motion to dismiss and McClafferty's motion for a preliminary injunction. The Court will grant Fawkes' and Williams' motion to dismiss, and the Court will deny McClafferty's motion for a preliminary injunction for the reasons stated in this memorandum opinion.

## II. THE SCOPE OF THE RECORD

Because McClafferty's motion for a preliminary injunction and the Defendants' motion to dismiss travel together, the Court states at the outset what it considered in deciding each.

### *a) The Rule 12(b)(6) Record*

In ruling on the motion to dismiss, the Court considered the Complaint, exhibits attached to the Complaint, matters of public record, and any document integral to or explicitly relied upon in the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). As part of the Rule 12(b)(6) record—at McClafferty's request and without objection from the Defendants—the Court has taken judicial notice of the August 24, 2026, advisory opinion of the Attorney General of the Virgin Islands on election law and candidate certification [ECF No. 26]. The Court has given due weight and consideration to that advisory opinion.

It is important to emphasize that the Court did not consider the testimony or exhibits received at the August 26, 2026, evidentiary hearing in deciding the motion to dismiss. Fed. R.

Civ. P. 12(d) permits no other course absent notice and an opportunity to present material, and no such notice was given.

Three categories of material that are part of the record require separate treatment. First, the exhibits appended to the Complaint, including the June 15, 2026, disqualification notice, are part of the pleading under Fed. R. Civ. P. 10(c). The Court considers them for what they state. It does not treat the disqualification notice's findings as established facts. Attaching an accusation to a complaint in order to challenge it is not an admission of the accusation. The rule that an attached document controls over inconsistent allegations applies only to legally binding instruments that govern the parties' rights—not to an adversary's disputed factual statements.

Second, the Candidate Verification Form submitted as Exhibit 1 to Defendants' motion is not attached to the Complaint. McClafferty's claims are not based on it. He does not sue on it and does not reference it. It therefore does not enter through the integral-document exception, and the Court does not rely on it in Part IV. Whether it may be considered as a matter of public record filed with the Elections System, and what legal effect it carries if so, are questions for a properly noticed motion.

Third, testimonial evidence adduced at the August 26, 2026, evidentiary hearing regarding who circulated particular petition sheets, the voter registration status of any circulator, and the accuracy of any circulator affidavit is extraneous to the pleadings. It appears nowhere in the Complaint or its exhibits. That testimonial evidence has not been considered by the Court for purposes of addressing the Defendants' motion to dismiss.

*b) The Preliminary Injunction Record*

In the ordinary course of events, this Court's assessment of McClafferty's motion for a preliminary injunction would rest on the testimony and exhibits received on August 26, 2026, and

on the supplemental submissions. Furthermore, the Court acknowledges that usually when ruling upon a motion for a preliminary injunction, Fed. R. Civ. P. 52(a)(2) requires the Court to state findings and conclusions supporting its ruling on the injunction.

However, in this instance, the Court has granted the Defendants' motion to dismiss under Rule 12(b)(6). Consequently, Rule 52(a)(2) does not apply here. While Rule 52(a)(2) requires findings of fact and conclusions of law when granting or refusing an interlocutory injunction, Fed. R. Civ. P. 52(a)(3) explicitly carves out an exception that is relevant here: "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion." Therefore, the Court has not set forth any findings of fact or conclusions of law relative to McClafferty's motion for a preliminary injunction.

## III. JURISDICTION

Counts I and II arise under Virgin Islands law. McClafferty invokes supplemental jurisdiction under 28 U.S.C. § 1367. Neither party addresses whether this Court properly exercises supplemental jurisdiction over purely local election claims following the transfer of general local civil jurisdiction to the Superior Court, or whether Chapter 17 of Title 18 affords a candidate any private right of action at all. The Court addresses the disposition of these counts in Part IV(b).

Subject matter jurisdiction over Counts III and IV exists under 28 U.S.C. §§ 1331, 1343(a). Section 1983 reaches persons acting under color of the law of any "State or Territory," and its protections extend to the Virgin Islands.

## IV. THE MOTION TO DISMISS

*a) Standard*

A complaint survives Rule 12(b)(6) if it pleads facts that, accepted as true, state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court identifies the elements, disregards allegations that are no more than legal conclusions, and asks whether the remaining well-pleaded facts plausibly give rise to an entitlement to relief.

McClafferty proceeds *pro se*. His filings are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That liberality does not excuse pleadings from *Twombly* and *Iqbal*, and it does not supply facts he has not alleged.

*b) Counts I and II: Virgin Islands Election Law*

Counts I and II are dismissed without prejudice. They present a single question of local law: Does 18 V.I.C. § 411 authorize the Supervisor to reopen a completed petition examination, after cures have been accepted and after the five-day window of § 412 has closed, on the basis of citizen complaints, and to disqualify on grounds of petition integrity? Count II is the same question stated in the negative, asking whether such an investigation belongs instead to the Board under § 47(8).

Both sides marshal Virgin Islands Supreme Court authority. Defendants rely on *Bryan v. Fawkes*, 61 V.I. 416, 462 (2014), and *Haynes v. Ottley*, 61 V.I. 547, 565–66 (2014), for the proposition that § 411 governs the Supervisor's administrative examination while § 412 supplies judicial review for the public. McClafferty relies on the same decisions for the proposition that the § 411 examination precedes and triggers the § 412 presumption, and that once the examination is complete and the period expires the papers stand unless set aside by court order.

Neither brief addresses the provision that appears to the Court to matter most. Section 411(a) provides that if the identity or capacity of any signer "seems to him doubtful or is challenged by any citizen, the Supervisor of Elections or his deputy within three days after the close of the nomination period shall hold a public hearing in the election district in which the signer in question purports to reside, to which hearing such signer and any material witnesses may be summoned." The statute then directs that the Supervisor "shall determine the signer's identity and capacity and ascertain that the candidates have been validly nominated."

That language is the Supervisor's own grant of investigative authority. It is also a command. It contemplates a public hearing, in the district, with the signer and material witnesses summoned, on a three-day clock keyed to the close of the nomination period. Six citizens complained about signers on McClafferty's St. Croix petitions. On the face of § 411(a) that is the event the statute addresses.

Defendants' position is that § 411 confers open-ended authority to investigate and disqualify until ballots are printed. The authority they cite for the durational point, *Haynes*, addresses § 411(b), which concerns whether a candidate meets the qualifications established by law for the office. Section 411(a) concerns examination of the petitions themselves and carries its own procedure and its own deadline. Defendants have not explained why the continuing authority recognized under § 411(b) permits an examination under § 411(a) conducted months later and without the hearing the subsection prescribes.

However, this critical question appears to be a matter of first impression under Virgin Islands law, and, as such, this Court respectfully declines to resolve it pursuant to 28 U.S.C. § 1367(c)(1). In declining supplemental jurisdiction, this Court is guided by *DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), in which the Third Circuit found that a district court had

abused its discretion by exercising supplemental jurisdiction over a state-law claim when it should not have done so. The Third Circuit emphasized that when a state-law claim involves a novel or unaddressed question of local statutory interpretation, § 1367(c)(1) strongly counsels that the federal court should step aside and allow local courts to speak first.

> ". . . [C]ertain issues of state law presented in the WPCL action also weigh heavily, tilting the balance against the exercise of supplemental jurisdiction. Pennsylvania courts have not addressed two novel and complex questions of state law squarely presented here: whether a WPCL action may rest on an implied employment contract that relies on alleged oral representations by Tyson managers; and whether the WPCL pertains to at-will, non-collective bargaining employees. The need to resolve these issues, which are better left to the Pennsylvania state courts, weighs in favor of declining supplemental jurisdiction."

*Id.* at 311 (internal citations and quotations omitted).

Therefore, consistent with the precedents of the Third Circuit, and in the interests of judicial comity, Counts I and II are best addressed in the Superior Court of the Virgin Islands. Consequently, this Court will abstain from the exercise of its supplemental jurisdiction over Counts I and II in McClafferty's Complaint, and they shall, perforce, be ordered dismissed without prejudice.

*c) Count III: Constitutional Claim Under Article I, Section 2*

Count III is dismissed with prejudice. The Delegate to Congress from the Virgin Islands is a statutory office. Congress created it. See 48 U.S.C. § 1711. Congress set its qualifications. See 48 U.S.C. § 1713. By contrast, U.S. Const. art. I, § 2 (upon which McClafferty relies) prescribes qualifications for Representatives chosen from States. This Constitutional provision does not apply to the office of Virgin Islands Delegate to Congress. Residents of the Virgin Islands have no constitutional right to voting representation in Congress. *Ballentine v. United States*, 486 F.3d 806, 811 (3d Cir. 2007).

In *Powell v. McCormack*, 395 U.S. 486 (1969), and *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), the Supreme Court held that neither Congress nor a State may add substantive qualifications to those the Constitution fixes. McClafferty argues the principle applies *a fortiori* to an office whose qualifications are fixed by statute. However, Article I, Section 2 of the United States Constitution does not apply to the office of Virgin Islands Delegate to Congress.

Even if this Court construed McClafferty's Count III as a claim under 48 U.S.C. § 1713 itself, it would fail. A signature requirement and the verification of signatures are procedural conditions of ballot placement. They are not substantive qualifications for office. The Supreme Court of the Virgin Islands has drawn precisely that line. See *Haynes*, 61 V.I. at 563 (deeming a nomination petition valid is not equivalent to deeming that the candidate has satisfied the minimum qualifications for the office he seeks). Because any potential amendment of the claim in Count III would be futile, this Court dismisses it with prejudice.

*d) Count IV: 42 U.S.C. § 1983*

Count IV is dismissed without prejudice. McClafferty articulates three distinct theories within Count IV of his claim: first, a ballot access theory; second, an equal protection theory; and third, a manner-of-decision theory. It is the Court's judgment that all three theories fail as a matter of law.

To the extent Count IV attacks the Virgin Islands' signature requirements themselves, it does not state a claim upon which relief can be granted. A jurisdiction may require a preliminary showing of support before placing a name on the ballot. *Jenness v. Fortson*, 403 U.S. 431, 438 (1971). The requirement of 100 signatures from each of two districts, collected over a month, in a territory with more than 31,000 registered voters, is an eminently reasonable nondiscriminatory

restriction under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

McClafferty's equal protection theory also fails. McClafferty alleges that similarly situated candidates were not subjected to the same process. However, he identifies no comparator, names no candidate, and pleads no facts about how the six complaints arose or who solicited them. Under *Snowden v. Hughes*, 321 U.S. 1, 7 (1944), the unequal application of a valid law creates an equal protection claim *only* on a showing of intentional or purposeful discrimination. Echoing *Snowden* more recently, the Third Circuit has said: "Unequal application of the . . . laws does not amount to a constitutional violation . . . unless there is shown to be present in it an element of intentional or purposeful discrimination. The burden of proving such discrimination is placed upon . . . [the party claiming discrimination]." *United States v. Torquato*, 602 F.2d 564, 568 (3d Cir. 1979). (internal citations and quotation marks omitted). McClafferty makes no such assertion of intentional or purposeful discrimination in his Complaint.

Finally, the manner-of-decision theory propounded by McClafferty is perhaps the only place where he has found a precarious foothold on an otherwise icy crevasse. The Court is concerned about the lack of transparency in Fawkes' investigation, as well as in the proceedings of the Virgin Islands Board of Elections highlighted by McClafferty. Nevertheless, even here, his claims fail as a matter of law.

McClafferty alleges that an examination completed and accepted in writing by Election Commission staff was reopened by the Supervisor based on unsworn complaints; that certification was postponed twice by the Supervisor's unilateral action; that no public hearing was held on the challenged signatures; and that disqualification followed a three-hour executive session by the Board of Elections, conducted without notice of the specific charges or an opportunity to confront

the complainants. By contrast, the defendants characterize this as routine election administration, and perhaps it was. But the Court need not resolve that factual dispute because even accepting every factual allegation McClafferty makes, his claim does not survive legal scrutiny.

There is a long-established doctrine in the law known as the presumption of official regularity. In the context of state and local administrative agencies, the Supreme Court has said: "Without a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (internal citations and quotation marks omitted). Furthermore, in *Withrow*, the Supreme Court required a showing of actual bias. *Id*.

While acknowledging the presumption of official regularity as a starting point, the Court makes clear that this is the beginning of the inquiry, and not the end of the inquiry as to McClafferty's manner of decision theory. This Court owes no formal deference to Defendant Fawkes' construction of her organic statute, nor to the manner in which the Board of Elections rendered its decision to disqualify McClafferty because *Chevron* deference has never governed a federal court's review of a territorial officer's reading of local law. And, in any event, *Chevron* has now been overruled by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

However, the fact that Defendant Fawkes' reading is not binding does not mean it counts for nothing, because *Loper Bright* explicitly preserved the enduring vitality of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Under *Skidmore*, a court exercising independent judgment may look for guidance to the interpretations of those responsible for implementing a statute, with the weight of such an interpretation depending upon the thoroughness of its consideration, the validity of its reasoning, and its consistency.

Consistent with *Skidmore*, Fawkes and Williams (as well as the Virgin Islands Board of Elections as a whole) are imbued with specialized local expertise and charged with the daily administration of the statutory framework that governs election administration in the territory. In the course of their routine work, they evaluated local conditions and reasoned through the operational puzzle presented by McClafferty's contested signatures. Their contemporaneous statutory interpretation and enforcement actions, while non-binding, provide a benchmark for how the statutes could function in practice.

And, because legal questions surrounding McClafferty's candidacy present matters of first impression, Defendant Fawkes' and Williams' statutory interpretations and the manner in which they carried out this enforcement action deserves a modicum of persuasive weight.

In this analytical framework, the temporal scope of the Virgin Islands Attorney General's advisory opinion of August 24, 2026, is especially significant. That opinion was rendered several months subsequent to the events comprising McClafferty's current claims. Consequently, any divergence by Fawkes, Williams, or the Board of Elections as a whole, from the procedures later articulated in the advisory opinion cannot be imputed to them as error, given that they operated in a regulatory environment devoid of that guidance from the Attorney General. To evaluate Fawkes, Williams, and the Board of Elections against an *ex post facto* standard would be unjust and incoherent. Accordingly, the Court declines to disturb Fawkes' and the Virgin Islands Board of Elections' frontline implementation of the statutory provisions at issue.

*e) Count V: The Civil RICO Claim*

Count V was voluntarily dismissed by McClafferty under Fed. R. Civ. P. 41(a)(1)(A)(i) before any answer or summary judgment motion. It is out of the case, and, as such, it is dismissed as moot.

## V. THE MOTION FOR PRELIMINARY INJUNCTION

In order to successfully seek a preliminary injunction, a movant must establish two gateway factors: first, a reasonable probability of success on the merits; and second, a likelihood of irreparable harm absent relief. Only if both gateway factors are satisfied does the Court weigh the harm to the nonmovant and the public interest, and determine whether all four factors together favor relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–79 (3d Cir. 2017); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008).

McClafferty does not seek to preserve the status quo. Rather, he seeks an order compelling election officials in the Virgin Islands to place his name on a ballot from which he has been disqualified since June 15. That is mandatory relief and, consequently, McClafferty carries an even heavier burden. "[W]hen the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

In the normal course of events, when ruling on a motion for a preliminary injunction, Fed. R. Civ. P. 52(a)(2) requires the Court to make findings of fact and conclusions of law when granting or refusing an interlocutory injunction. However, Fed. R. Civ. P 52(a)(3) carves out an exception: "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion."

Since the Court has granted Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the underlying action is terminated. Consequently, Plaintiff's Motion for a Preliminary Injunction is denied as moot. *See* Fed. R. Civ. P. 52(a)(3) (excusing findings of fact and conclusions of law on Rule 12 motions).

**DATED**: September 8, 2026

*s/ Evan Rikhye*

**EVAN RIKHYE**
**United States District Judge**